**KAHN SWICK & FOTI, LLC**
KIM E. MILLER (KM-6996)
250 Park Ave., Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498

-and-

LEWIS S. KAHN
MICHAEL ROBINSON
206 Covington St.
Madisonville, LA 70447
Telephone: (504) 455-1400
Fax: (504) 455-1498

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID DUCHARME, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | **CASE NO. _____** |
| Plaintiff, ) ) ) | **COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| v. ) ) | |
| INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI, and DOMENIC DELLA PENNA, ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. ) ) ) ) ) | |

Plaintiff David Ducharme ("Plaintiff") alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based on, *inter alia,* the investigation of Plaintiff's counsel. This investigation included, but was not limited to, a review and analysis of: (i) public filings of Intellipharmaceutics International, Inc. ("Intellipharmaceutics" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (ii) transcripts and investor presentations; (iii) Intellipharmaceutics's press releases; (iv) analyst reports and independent media reports regarding Intellipharmaceutics, its stock price movement, pricing and volume data; and (v) other publicly available material and data. Counsel's investigation into the factual allegations contained herein is continuing, and many of the relevant facts are known only by Defendants and/or are exclusively within their custody or control. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after further investigation and after a reasonable opportunity to conduct discovery.

## I.    SUMMARY OF THE ACTION

1.    Plaintiff brings this action individually and on behalf of all persons or entities who purchased securities of Intellipharmaceutics International Inc. ("Intellipharmaceutics") between **May 21, 2015** and **July 26, 2017,** inclusive (the "Class Period"). Plaintiff seeks to recover damages caused by Defendants' violations of Sections l0(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule l0b-5 promulgated thereunder.

2.    Intellipharmaceutics is a pharmaceutical company specializing in research, development, and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs. Founded in 1998, the Company is headquartered in Toronto, Canada. IntelliPharmaceutic's stock trades on the NASDAQ Stock Exchange ("NASDAQ") under the

ticker symbol "IPCI."

3.      The Company's main product candidate is Rexista, an abuse-deterrent oxycodone hydrochloride extended release tablet. Rexista is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, products, financial condition and prospects. Specifically, Defendants made false and/or misleading positive statements about its New Drug Application ("NDA") for Rexista and/or failed to disclose that: (i) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (ii) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; (iii) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA; and (iv) as a result of the foregoing, Intellipharmaceutics' public statements were materially false and misleading at all relevant times.

5.      On July 27, 2017, before the market opened, Intellipharmaceutics issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing an update on the U.S. Food FDA Advisory Committee Meeting for Rexista. The press release stated, in pertinent part:

**Intellipharmaceutics Provides Update on FDA Advisory Committees Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse-Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain'**

TORONTO, July 27, 2017 (GLOBE NEWSWIRE) – Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the

"Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that *the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") voted 22 to 1 in finding that the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets should not be approved at this time. The committees also voted 19 to 4 that the Company has not demonstrated that Rexista™ has properties that can be expected to deter abuse by the intravenous route of administration, and 23 to 0 that there are not sufficient data for Rexista™ to support inclusion of language regarding abuse-deterrent properties in the product label for the intravenous route of administration.*

*The committees expressed a desire to review the additional safety and efficacy data for RexistaTM that may be obtained from human abuse potential studies for the oral and intranasal routes of administration.* Accordingly, the Company intends to conduct Category 3 abuse potential studies to provide the data the Company believes necessary to support abuse-deterrent properties of RexistaTM for the oral and intranasal routes, which are required for abuse-deterrent labeling claims for such routes. *The Company has an FDA approved protocol for a human abuse potential study for the intranasal route of abuse, which it plans on commencing in the coming weeks.*

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. The FDA is not bound by the advisory committees' recommendation, but will consider their guidance as it continues its review of RexistaTM. The FDA set a Prescription Drug User Fee Act (PDUFA) goal date of September 25, 2017 for completion of its review of our RexistaTM NDA candidate.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "While we are disappointed with the Committees' overall vote, we will endeavor to remedy the concerns raised by completing the necessary human abuse potential studies in relation to the intranasal and oral routes of abuse. We will continue to work with the FDA in progressing this file over the next few weeks as we approach the September 25, 2017 PDUFA date."

(Emphasis added).

6.      In fact, the report issued by the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the FDA, which became available the same day, itself stated in relevant part:

3

> ***The safety information collected in the pharmacokinetic studies was of limited value due to the fact that these were generally single-dose studies*** (except one multiple dose study) conducted in healthy volunteers who were naltrexone blocked. ***There were no human abuse liability studies submitted with the NDA. No new safety signals were identified during the review of the oxycodone ER tablets application beyond what is already known for oxycodone products.***"

(Emphasis added).

7.      On this news, IntelliPharma's share price fell $1.13, or 45.38%, to close at $1.36 on July 27, 2017.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities after the truth was revealed, Plaintiff and other Class members have suffered significant losses and damages.

## II.      <u>JURISDICTION AND VENUE</u>

9.      This complaint asserts claims under §§l0(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule l0b-5, 17 C.F.R. §240.l0b-5 ("Rule l0b-5").

10.      This Court has subject matter jurisdiction over this action under §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331, because this is a civil action arising under the laws of the United States.

11.      Venue is proper in this District under §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §139 l(b), (c) and (d). Many of the acts and transactions that constitute the alleged violations of the law, including the dissemination to the public of materially false and misleading statements of fact, occurred in this District where the Company's common stock traded on NASDAQ.

12.      In connection with the acts alleged in this complaint, Defendants, directly or

indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications and the facilities of national securities exchanges.

## III.    THE PARTIES

13.    Plaintiff David Ducharme, as set forth in his certification attached hereto as Exhibit A, purchased Intellipharmaceutics stock during the Class Period and was damaged when the true facts were revealed, thereby removing the artificial inflation from the price of the stock.

14.    Defendant IntelliPharmaceutics is incorporated in Canada, with principal executive offices located at 30 Worcester Road, Toronto, ON M9Q 5X2, Canada.

15.    Defendant Isa Odidi ("Odidi") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chief Scientific Officer.

16.    Defendant Domenic Della Penna ("Penna") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

17.    Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein as the "Individual Defendants."

## IV.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

18.    The Class Period begins on May 21, 2015, when Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced acceleration of the Rexista development program and the Company's intention to file a NDA. The press release stated:

> TORONTO, May 21, 2015 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and

5

targeted-release oral solid dosage drugs, today announced that the United States Food and Drug Administration ("FDA") provided the Company with notification regarding its Investigational New Drug Application ("IND") submission for Rexista™ Oxycodone XR (Abuse Deterrent oxycodone hydrochloride) extended release tablets. The notification from the FDA stated that the Company will not be required to conduct Phase III studies if bioequivalence to OxyContin™ is demonstrated.

The Company had earlier announced, on March 30, 2015, that it had submitted an IND to the FDA for Rexista™ Oxycodone XR in anticipation of the commencement of Phase III clinical trials. At the same time the Company had also announced that topline data results of three definitive Phase I pharmacokinetic clinical trials (single dose fasting, single dose steady-state fasting, and single dose fed) all met the bioequivalence criteria when compared to the existing branded drug OxyContin™. *The Company believes, in light of these prior results, that it will not be required to conduct Phase III studies, although no assurance to that effect can be given.*

*The Company believes the FDA notification is significant as it provides a basis for an accelerated development plan for its Rexista™ Oxycodone XR product candidate, without the need for more costly and time-consuming Phase III studies. The Company intends to file a New Drug Application ("NDA") for Rexista™ Oxycodone XR (Abuse Deterrent oxycodone hydrochloride) extended release tablets with the FDA within the next 6 to 12 months, although no assurance to this effect can be given.* Further, there can be no assurance that the FDA will ultimately approve the NDA for sale of Rexista™ Oxycodone XR in the U.S. market, or that it will ever be successfully commercialized.

"We are thrilled with the FDA's positive acknowledgement, which enables us to accelerate the development and commercialization of our abuse deterrent Rexista™ Oxycodone XR product candidate," stated Dr. Isa Odidi, CEO and co-founder of Intellipharmaceutics. "The avoidance of a Phase III trial eliminates a significant financial hurdle. More importantly, it shortens the development timeline and potential time to market."

(Emphasis added).

19.     The statements identified in ¶20 above were materially false and misleading when made because: (a) Intellipharmaceutics did not have sufficient data to support approval of the Rexista under the FDA's abuse-deterrent properties guidance; and (b) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA.

20.     On May 26, 2015, Intellipharmaceutics issued a press release, also attached as

Exhibit 99.1 to a Form 6-K filed with the SEC, which announced that the FDA granted fast-track

designation to the Rexista development program. The press release stated:

### FDA Grants Fast Track Designation for Intellipharmaceutics Rexista™ Oxycodone XR Incorporating PODRAS™ Technology

**TORONTO, May 26, 2015 (GLOBE NEWSWIRE) --**
Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that the United States Food and Drug Administration ("FDA") has reviewed the Company's request for Fast Track designation for its abuse deterrent Rexista™ Oxycodone XR (Oxycodone HCl) extended-release tablets development program incorporating its Paradoxical OverDose Resistance Activating System ("PODRAS™") and has concluded that it meets the criteria for Fast Track designation.

*Fast Track* is a designation assigned by the FDA in response to an applicant's request which meets FDA criteria. The designation mandates the FDA to facilitate the development and expedite the review of drugs intended to treat serious or life threatening conditions and that demonstrate the potential to address unmet medical needs*. **This could potentially result in accelerated approval for Rexista™ Oxycodone XR thereby making it available to patients earlier than would be traditionally possible***.

In March 2015, the Company requested Fast Track designation for its novel, and potentially first-in-class, Rexista™ Oxycodone XR abuse deterrent oxycodone hydrochloride extended release tablets incorporating its PODRAS™ technology platform. ***A basis for the request was that Rexista™ Oxycodone XR has the potential to address an unmet medical need, namely the prevention, deterrence or reduction of the abuse of oxycodone HCl extended release solid oral dosage forms involving the deliberate or inadvertent oral ingestion of more intact pills or tablets than prescribed to achieve a feeling of euphoria. This is a very common and serious form of drug abuse.***

Rexista™ Oxycodone XR is intended for the management of moderate to severe pain when a continuous, around-the-clock analgesic is needed for an extended period of time. Such medications are considered important in the treatment of chronic pain, but have the potential for abuse.

"We are pleased with the grant by the FDA of Fast Track status for Rexista™ Oxycodone XR incorporating our proprietary PODRAS™ technology which is being formulated to decrease the 'liking' of dose escalation and decrease or delay

7

the attendant risk of respiratory depression in drug-naive individuals. The development of this product candidate could, if successful, decrease the desirability of taking more intact tablets than prescribed, potentially addressing an unmet need and possibly resulting in fewer accidental or intentional deaths," stated Dr. Isa Odidi, CEO and co-founder of Intellipharmaceutics. "To the best of our knowledge, no other product currently approved for sale in the U.S. or Canada has demonstrated this potential."

(Emphasis added).

21.    The statements identified in ¶22 above were materially false and misleading when made because: (a) Intellipharmaceutics did not have sufficient data to support approval of the Rexista under the FDA's abuse-deterrent properties guidance; and (b) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA.

22.    On October 9, 2015, Intellipharmaceutics attached as Exhibit 99.1 to a Form 6-K filed with SEC its quarterly report for the third quarter of 2015, ended August 31, 2015. The 3Q:2015 report stated:

In May 2015, the Company announced that the FDA had provided the Company with notification regarding its IND submission for Rexista™ Oxycodone XR (Abuse Deterrent oxycodone hydrochloride) extended release tablets indicating that the Company will not be required to conduct Phase III studies if bioequivalence to OxyContin® is demonstrated. *The Company believes, in light of previously announced results of the three definitive Phase I pharmacokinetic trials, that it will not be required to conduct Phase III studies, although no assurance to that effect can be given. In May 2015, the Company also announced that the FDA had reviewed the Company's request for Fast Track designation for its Rexista™ Oxycodone XR (Abuse deterrent oxycodone hydrochloride) extended-release tablets development program incorporating its Paradoxical OverDose Resistance Activating System ("PODRAS™") and had concluded that it meets the criteria for Fast Track designation. The designation mandates the FDA to facilitate the development and expedite the review of drugs intended to treat serious or life threatening conditions and that demonstrate the potential to address unmet medical needs. During the quarter ended August 31, 2015, the Company continued to work towards satisfying the requirements to file an NDA for Rexista™ Oxycodone XR (Abuse Deterrent oxycodone hydrochloride) extended release tablets with the FDA and plans to complete this filing in the first half of 2016, although no assurance to this effect can be given.*

(Emphasis added).

23.    The statements identified in ¶24 above were materially false and misleading when made because: (a) Intellipharmaceutics did not have sufficient data to support approval of the Rexista under the FDA's abuse-deterrent properties guidance; and (b) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA.

24.    On January 14, 2016, Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced the bioequivalence results for Rexista. The press release stated:

**Intellipharmaceutics Announces Successful Bioequivalence Results for Abuse Deterrent Rexista™ Oxycodone XR**

TORONTO, January 14, 2016 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that pivotal bioequivalence trials of the Company's Rexista™ Oxycodone XR (abuse deterrent oxycodone hydrochloride) extended release tablets, dosed under fasted and fed conditions, had demonstrated bioequivalence to OxyContin® (oxycodone hydrochloride) extended release tablets as manufactured and sold in the United States by Purdue Pharma LP. The study design was based on United States Food and Drug Administration ("FDA") recommendations and compared the lowest and highest strengths of exhibit batches of the Company's Rexista™ Oxycodone XR to the same strengths of OxyContin®. The results show that the ratios of the pharmacokinetic metrics, $C_{max}$, $AUC_{0-t}$ and $AUC_{0-f}$ for Rexista™ vs. OxyContin®, are within the interval of 80% - 125% required by the FDA with a confidence level exceeding 90%.

***The Company had earlier announced, in March 2015, that topline data results of three definitive Phase I pharmacokinetic clinical trials (single dose fasting, single dose steady-state fasting, and single dose fed), conducted on pilot batches of the Company's Rexista™ Oxycodone XR, all met the FDA bioequivalence criteria when compared to the existing branded drug OxyContin®.***

The Company had also earlier announced, in May 2015, that the FDA had provided the Company with notification regarding its Investigational New Drug Application ("IND") submission for Rexista™ Oxycodone XR. The notification

from the FDA had stated that the Company would not be required to conduct Phase III studies if bioequivalence to OxyContin® was demonstrated.

Having now demonstrated such bioequivalence for its Rexista™ Oxycodone XR product to be marketed upon FDA approval, the Company intends to complete the regulatory filing requirements and file a New Drug Application ("NDA") for Rexista™ Oxycodone XR with the FDA within the next 6 months in accordance with the NDA 505(b)(2) regulatory pathway. There can be no assurance that the FDA will ultimately approve the NDA for the sale of Rexista™ Oxycodone XR in the U.S. market, or that it will ever be successfully commercialized.

***"We take great pride in being the first pharmaceutical company, to the best of our knowledge, to have demonstrated bioequivalence in both fasted and fed conditions to the brand reference drug OxyContin®. This enables us to accelerate the development and commercialization of our abuse deterrent Rexista™ Oxycodone XR product candidate without the need for costly and time-consuming Phase III efficacy trials,"*** stated Dr. Isa Odidi, CEO and co-founder of Intellipharmaceutics. *"We look forward to filing an NDA within the next six months, which we hope will lead to a positive contribution in addressing an unmet need in opioid abuse and addiction."*

(Emphasis added).

25.     The statements identified in ¶26 above were materially false and misleading when made because: (a) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (b) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; and (c) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA under the FDA's abuse-deterrent properties guidance.

26.     On November 25, 2016, Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced the submission of the NDA for Rexista. The press release stated:

**Intellipharmaceutics Submits New Drug Application for
Rexista® (oxycodone hydrochloride extended release), an Abuse Deterrent
Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, November 25, 2016 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that it has filed a New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") seeking authorization to market its Rexista® abuse-deterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths.

Rexista® is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. *The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista® is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes a comprehensive array of abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of drug by oral, intra-nasal and intravenous pathways, having reference to the FDA's "Abuse-Deterrent Opioids – Evaluation and Labelling" guidance published in April 2015.*

*The abuse-deterrent properties incorporated into Rexista® are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection. If approved, Rexista® may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused.* The Company previously announced the results of a food effect study which showed that Rexista® can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

As previously announced the FDA, under the small business waiver provision of the Federal Food, Drug, and Cosmetics Act, granted the Company a waiver of the $1,187,100 application fee for Rexista®.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "The NDA submission of Rexista® represents a critical milestone and turning point for the Company. *This is our first NDA submission and the first abuse-deterrent oxycodone product candidate we are aware of that not only resists common forms of abuse but provides a preventive tool that may flag early warning of abuse. We are excited about the prospect of Rexista®, if approved, having a positive impact in addressing the opioid epidemic. We believe our suite of abuse-deterrent and overdose prevention technologies are best in class and we look forward to further expanding our development program for abuse-deterrent pain and other*

11

*medications.* The Company has identified potential manufacturing partners and is currently evaluating various manufacturing options for Rexista® in the U.S. We look forward to working with the FDA during their review of our NDA submission."

(Emphasis added).

27.    The statements identified in ¶28 above were materially false and misleading when made because: (a) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (b) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; and (c) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA under the FDA's abuse-deterrent properties guidance.

28.    On February 2, 2017, Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced that the FDA accepted the filing of the Rexista NDA. The press release stated:

### Intellipharmaceutics Announces FDA Acceptance for Filing of NDA for RexistaTM (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain

TORONTO, February 2, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that the U.S. Food and Drug Administration ("FDA") has accepted for filing the Company's previously-announced New Drug Application ("NDA") seeking authorization to market its RexistaTM abuse-deterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths. The FDA has determined that the Company's application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017.

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative

treatment options are inadequate. The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). ***The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labelling" guidance published in April 2015.***

***The abuse-deterrent properties incorporated into RexistaTM are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection. If approved, RexistaTM may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused.*** The Company previously announced the results of a food effect study which showed that RexistaTM can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, ***"The acceptance of filing of our NDA for RexistaTM represents an important step towards the commercialization of a potentially best‑in‑class abuse-deterrent oxycodone hydrochloride extended release product***. We look forward to working with the FDA during their review of our NDA submission."

(Emphasis added).

29.     The statements identified in ¶30 above were materially false and misleading when made because: (a) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (b) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; and (c) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA under the FDA's abuse-deterrent properties guidance.

30.     On February 28, 2017, Intellipharmaceutics filed its annual report as a Form 20-F with the SEC, which announced the Company's financial and operating results for the fiscal

year ending November 30, 2016. The 2016 20-F was signed and certified under the Sarbanes

Oxley Act of 2002 by the Individual Defendants. The 2016 20-F stated:

> In February 2017, the FDA accepted for filing the NDA we filed in November 2016 seeking authorization to market our Rexista™ product candidate (abuse-deterrent oxycodone hydrochloride extended release tablets) in the 10, 15, 20, 30, 40, 60 and 80 mg strengths.  The FDA has determined that our application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("**PDUFA**") of September 25, 2017. Rexista™ is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.  The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). ***The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous, having reference to the FDA's "<u>Abuse-Deterrent Opioids — Evaluation and Labeling</u>" guidance published in April 2015.***

*          *          *

**Rexista™** *(Abuse Deterrent Oxycodone Hydrochloride Extended-Release Tablets)*

One of our non-generic products under development is our Rexista™ (abuse deterrent oxycodone hydrochloride extended release tablets) product candidate, intended as an abuse- and alcohol-deterrent controlled-release oral formulation of oxycodone hydrochloride for the relief of pain. Rexista™ is a new drug candidate, with a unique long acting oral formulation of oxycodone intended to treat moderate-to-severe pain when a continuous, around the clock opioid analgesic is needed for an extended period of time. The formulation is intended to present a significant barrier to tampering when subjected to various forms of physical and chemical manipulation commonly used by abusers. It is also designed to prevent dose dumping when inadvertently co-administered with alcohol. Dose dumping is the rapid release of an active ingredient from a controlled-release drug into the blood stream that can result in increased toxicity, side effects, and a loss of efficacy. Dose dumping can result by consuming the drug through crushing, taking with alcohol, extracting with other beverages, vaporizing or injecting. In addition, when crushed or pulverized and hydrated, the proposed extended release formulation is designed to coagulate instantaneously and entrap the drug in a viscous hydrogel, which is intended to prevent syringing, injecting and snorting. Our Rexista™ formulation is difficult to abuse through the application of heat or an open flame, making it difficult to inhale the active ingredient from burning. Our Rexista™ formulation contains a blue dye that is emitted once the tablet is tampered with or crushed. This stigmatizing blue dye may act as a deterrent if

abused orally or via the intra-nasal route and may also serve as an early warning mechanism to flag potential misuse or abuse.

*          *          *

The FDA is actively developing a regulatory program for the narcotic analgesic class of products. In April 2015, the FDA issued a guidance document, "Abuse-Deterrent Opioids – Evaluation and Labeling," to assist the industry in developing new formulations of opioid drugs with abuse-deterrent properties. ***We adhered to the April 2015 guidance document in pursuing various abuse deterrent label claims when we filed our NDA for Rexista™.***

(Emphasis added).

31.     The statements identified in ¶32 above were materially false and misleading when made because: (a) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (b) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; and (c) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA under the FDA's abuse-deterrent properties guidance.

32.     On June 30, 2017, Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced an FDA Advisory Committee Meeting for Rexista. The press release stated:

**Intellipharmaceutics Announces FDA Advisory Committee Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, June 30, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that a joint meeting of the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") has been scheduled for July 26, 2017 to review the

Company's New Drug Application ("NDA") for RexistaTM abuse-deterrent oxycodone hydrochloride extended release tablets.

The Company's NDA submission for RexistaTM was accepted for review by the FDA on February 2, 2017. The FDA set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017. RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). ***The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labeling" guidance published in April 2015.***

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, *"We are very pleased with the progress made towards our goal of securing FDA approval of our RexistaTM NDA candidate. We look forward to sharing our data and discussing Rexista™ with the members of the Advisory Committees, and in continuing to work closely with the FDA through the review process."*

***The abuse-deterrent properties incorporated into RexistaTM are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse. If approved, RexistaTM may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused.*** The Company previously announced the results of a food effect study which showed that RexistaTM can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

(Emphasis added)

33.    The statements identified in ¶34 above were materially false and misleading when made because: (a) Intellipharmaceutics failed to conduct a human abuse liability study to support its Rexista NDA; (b) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; and (c) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA under the FDA's abuse-deterrent properties guidance.

## V.    THE TRUTH EMERGES

34.    On July 27, 2017, before the market opened, Intellipharmaceutics issued a press release, also attached as Exhibit 99.1 to a Form 6-K filed with the SEC, which announced an update on the FDA Advisory Committee Meeting for Rexista. The press release stated:

**Intellipharmaceutics Provides Update on FDA Advisory Committees Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse-Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, July XX, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") voted 22 to 1 in *finding that the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets should not be approved at this time. The committees also voted 19 to 4 that the Company has not demonstrated that Rexista™ has properties that can be expected to deter abuse by the intravenous route of administration, and 23 to 0 that there are not sufficient data for Rexista™ to support inclusion of language regarding abuse-deterrent properties in the product label for the intravenous route of administration.*

The committees expressed a desire to review the additional safety and efficacy data for RexistaTM that may be obtained from human abuse potential studies for the oral and intranasal routes of administration. *Accordingly, the Company intends to conduct Category 3 abuse potential studies to provide the data the Company believes necessary to support abuse-deterrent properties of RexistaTM for the oral and intranasal routes, which are required for abuse-deterrent labeling claims for such routes. The Company has an FDA approved protocol for a human abuse potential study for the intranasal route of abuse, which it plans on commencing in the coming weeks*.

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.  The FDA is not bound by the advisory committees' recommendation, but will consider their guidance as it continues its review of RexistaTM.  The FDA set a Prescription Drug User Fee Act (PDUFA) goal date of September 25, 2017 for completion of its review of our RexistaTM NDA candidate.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "*While we are disappointed with the Committees' overall vote, we will endeavor to remedy the concerns raised by completing the necessary human abuse potential studies in relation to the intranasal and oral routes of abuse.* We will continue to work with the FDA in progressing this file over the next few weeks as we approach the September 25, 2017 PDUFA date."

(Emphasis added).

35.    On the same day, the report issued by the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the FDA became available. The report stated:

> *"The safety information collected in the pharmacokinetic studies was of limited value due to the fact that these were generally single-dose studies* (except one multiple dose study) conducted in healthy volunteers who were naltrexone blocked. *There were no human abuse liability studies submitted with the NDA. No new safety signals were identified during the review of the oxycodone ER tablets application beyond what is already known for oxycodone products."*

(Emphasis added).

36.    As a result of these revelations of the true facts, the price of shares of Intellipharmaceutics's common stock fell sharply throughout the day, closing at $1.36 at the end of trading on July 27, 2017. This drop of $1.13 represented a decline of over 45%.

## VI.    PSLRA STATUTORY SAFE HARBOR DOES NOT APPLY

37.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly materially false and misleading statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Intellipharmaceutics who knew that those statements were false when made.

## VII.   CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Intellipharmaceutics securities during the Class Period (the "Class"); and were damaged upon the revelation of the true facts. Excluded from the Class are Defendants herein, present and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intellipharmaceutics's common stock was actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Intellipharmaceutics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of

federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- Whether the federal securities laws were violated by Defendants' acts as alleged herein;
- Whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Intellipharmaceutics, including the business prospects of Intellipharmaceutics and the prospects of approval for the Rexista NDA;
- Whether the Individual Defendants caused Intellipharmaceutics to issue materially false and misleading financial statements during the Class Period;
- Whether Defendants acted knowingly or recklessly in issuing false and misleading statements to investors;
- Whether the prices of Intellipharmaceutics's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44.    Plaintiff will rely, in part, upon the presumption of reliance established by the

fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- The omissions and misrepresentations were material;

- Intellipharmaceutics's securities are traded in an efficient market;

- The Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- The Company traded on the NASDAQ and was covered by multiple analysts;

- The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

- Plaintiff and members of the Class purchased, acquired and/or sold Intellipharmaceutics securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## VIII.   COUNT I: Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     Plaintiff asserts Section 10(b) and Rule 10b-5(a), (b) and (c) claims against all Defendants.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC. Rule 10b-5(a) makes it unlawful for any person, directly or indirectly to employ any device, scheme, or artifice to defraud. Rule 10b-5(b) makes it unlawful for any person, directly or indirectly to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Rule 10b-5(c) makes it unlawful for any person, directly or indirectly, to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of common stock. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Intellipharmaceutics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Intellipharmaceutics securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the

quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Intellipharmaceutics securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Intellipharmaceutics's finances and business prospects.

51.    As established by the facts alleged above, as well as by virtue of their positions at Intellipharmaceutics, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Additional information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.

52.    Intellipharmaceutics is liable for all materially false and misleading statements and omissions made during the Class Period, as alleged above, including the false and misleading statements made by the Company's officers and agents, as alleged above, as the maker of such statements and under the principle of *respondeat superior.*

53.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Intellipharmaceutics. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to

23

Intellipharmaceutics's business, products, financial condition and prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Intellipharmaceutics securities were artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Intellipharmaceutics's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Intellipharmaceutics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.     During the Class Period, Intellipharmaceutics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Intellipharmaceutics securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Intellipharmaceutics securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Intellipharmaceutics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

57.     This action was filed within two years of discovery of Plaintiff's claims, including discovery of the facts necessary to allege that Defendants acted with scienter, and within five years of the purchase on which such claims are based.

IX.    **COUNT II: Violations of Section 20(a) of the Exchange Act Against Individual Defendants**

58.     Plaintiff repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff asserts Section 20(a) claims against the Individual Defendants.

60.     During the Class Period, the Individual Defendants directed the daily operation and management of Intellipharmaceutics, and directed the financial disclosures and statements to investors regarding, *inter alia*, Intellipharmaceutics's business operations.

61.     As described above, the Individual Defendants knew the adverse non-public information about Intellipharmaceutics alleged herein.

62.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Intellipharmaceutics's financial condition and prospects, and to correct promptly any public statements issued by Intellipharmaceutics which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the

25

Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intellipharmaceutics disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Intellipharmaceutics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Intellipharmaceutics within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intellipharmaceutics securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Intellipharmaceutics, and by reason of the above conduct, is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Intellipharmaceutics.

## X.   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## XI.   **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 30, 2017                              Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (KM-6996)
250 Park Ave., Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498

-and-

Lewis S. Kahn
Michael Robinson
206 Covington St.
Madisonville, LA 70447
Telephone: (504) 455-1400
Fax: (504) 455-1498